JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OLD CANAL FINANCIAL CORPORATION<br><br>OLD CANAL FINANCIAL CORPORATION ET AL.<br><br>v.<br><br>SARSENSTONE CORPORATION ET AL. | CASE NO. SACV-15-1368-MWF; SACV-15-1475-MWF ✓<br><br>**OPINION AFFIRMING THE BANKRUPTCY COURT'S 2015 ORDER** |

      Before the Court is a consolidated bankruptcy appeal from the United States Bankruptcy Court (the Honorable Theodor C. Albert, United States Bankruptcy Judge) (the "Bankruptcy Court"). Appellants Michael W. Griffith, Foreclosure Consultants, Inc., and Thomas W. Hood appeal from the Bankruptcy Court's Order Clarifying and Providing Instruction with Respect to the Order Dated November 5, 2009, issued on August 6, 2015 (the "2015 Order"). (Excerpts of Record ("ER") 001991–2001). Appellee Sarsenstone Corporation ("Sarsenstone"), which is also referenced as Respondent, was the Chapter 7 Trustee's Liquidation Agent in the bankruptcy proceedings.

      Appellants Griffith and FCI filed their Appellants' Opening Brief on November 7, 2015. (Docket No. 20). Appellee Sarsenstone filed its Appellee's Reply Brief on December 12, 2015 (Docket No. 22), to which Appellants filed their

Appellants' Reply Brief on January 12, 2016 (Docket No. 23). Appellant Hood filed a Joinder in both Griffith and FCI's Opening and Reply Briefs. (Docket Nos. 18, 24).

The Court has reviewed the papers filed on this appeal and held a hearing on **March 28, 2016**.

For the reasons stated below, the Court **AFFIRMS** the 2015 Order. The Bankruptcy Court did not exceed its authority or err in its interpretation that, under the Settlement Agreement, Sarsenstone had standing to pursue claims against Appellants as both the Master Pool Trustee and the Liquidating Agent—*Caplin* and *Williams* are distinguishable. Sarsenstone's failure to obtain the $1 million bond did not affect its status as the Master Pool Trustee because, under California law, the bond was not a condition precedent. Finally, the Bankruptcy Court did not err in concluding that its previous order from 2009 incorporated the Settlement Agreement.

## I. BACKGROUND

Between 2002 and 2007, Old Canal Financial Corporation ("OCF") was in the business of acquiring and forming into loan pools defaulted consumer loans ("Loan Pools"). (ER at 1996). OCF raised funds from third-party investors to acquire the Loan Pools, organized the Loan Pools as investment trusts that would hold title to the consumer loans, and designated OCF itself to serve as the trustee to these investment trusts. (*Id.* at 821, 847, 871).

In April 2007, a group of OCF creditors filed an involuntary Chapter 7 Petition against OCF. (*Id.* at 821). In September 2007, the Bankruptcy Court granted the requested relief and appointed a Chapter 7 Trustee. (*Id.*).

In May 2008, certain investors in the Loan Pools elected Sarsenstone and John Ballas as successor trustees. (*Id.* at 6). Mr. Ballas subsequently resigned his trusteeship in favor of Sarsenstone, and the Bankruptcy Court ratified these changes. (*Id.*). Around that time, other investors also elected Sarsenstone to serve as their

"Alternative or Reserve Trustee" in case the Chapter 7 Trustee resigned or became disqualified. (*Id.* at 7).

Of the 69 Loan Pools that OCF had previously acquired, as of 2009, Sarsenstone was the trustee of 51 Loan Pools and the Chapter 7 Trustee was the trustee of 7 Loan Pools. (*Id.* at 887–88). The 11 remaining Loan Pools had been previously transferred in 2004 by OCF to its loan servicing company, FCI Lender Services, Inc. (*Id.*; *id.* at 1051–52). As discussed in detail below, the legal effect of these transfers is the subject of pending litigation between the parties in state court. (*Id.* at 1051–52).

In 2009, a dispute arose between the Chapter 7 Trustee (representing OCF's creditors) and Sarsenstone (representing the interests of the Loan Pool investors) as to whether the assets in the Loan Pools, including any claims and causes of action, belonged to OCF's Bankruptcy Estate or the investment trusts whose funds were used to acquire the Loan Pools. (*Id.* at 822). Apparently OCF never transferred title in the Loan Pools to the investment trusts as the investors were led to believe; "bare legal title" in the Loan Pools therefore remained with OCF. (*Id.*). Ultimately, the Chapter 7 Trustee and Sarsenstone recognized that "litigation between [the two entities] would strain the limited resources of both [] and . . . risk that genuine wrongdoers would successfully retain their ill-gotten benefits." (*Id.* at 19). Therefore, the Chapter 7 Trustee and Sarsenstone entered into a Settlement Agreement to resolve their dispute. (*Id.*).

The Settlement Agreement, executed on May 21, 2009, provided as follows:

- The Chapter 7 Trustee shall resign as trustee of the 7 Loan Pools of which the Chapter 7 Trustee was the trustee; Sarsenstone shall become the new trustee of those Loan Pools. (*Id.* at 20 ¶ 2).
- All assets of the Loan Pools, including causes of action, shall be consolidated for liquidation purposes into a single "Master Loan Pool" of which Sarsenstone will be the "Master Pool Trustee." On or before

3

September 30, 2009, Sarsenstone shall obtain a fidelity bond of at least $1 million for the benefit of the Chapter 7 Trustee and the beneficiaries of the Master Loan Pool in the event of any misapplication of the Master Loan Pool asserts or other breaches of fiduciary duty by Sarsenstone. As the Master Pool Trustee, Sarsenstone shall have all the powers and rights granted in the Loan Pool trust instruments. (*Id.* ¶ 3).

- Sarsenstone shall also serve as the "Liquidation Agent" for the Chapter 7 Trustee. (*Id.*). Specifically, the Chapter 7 Trustee shall convey and assign for purposes of collection all of her right, title, and interest to any and all of the property of the estate. (*Id.* ¶ 6). In carrying out Sarsenstone's responsibilities as the Liquidation Agent, Sarsenstone shall have all the powers and rights to:
    - Collect and reduce to cash any and all debts, instruments, claims, causes of action, or other items of value held by the Master Loan Pool;
    - Institute litigation (including litigation that would be deemed derivative of litigation and claims assigned to Sarsenstone by the Chapter 7 Trustee) against third parties to maximize the proceeds of liquidation;
    - Settle and compromise any and all claims against third parties alleged to have acquired control over or rights in property rightfully belonging to the Master Loan Pool or the Chapter 7 Trustee; and
    - Apply to the Bankruptcy Court for instruction regarding the purpose, effect, and/or construction of the Settlement Agreement or the scope of the Master Pool Trustee's powers and/or standing to prosecute litigation. (*Id.* ¶ 3(a)–(g)).
- The Bankruptcy Court shall retain jurisdiction to adjudicate all controversies regarding [the Settlement] Agreement . . . [and] any issues

>raised by any party to [the Settlement] Agreement in order to ensure that the purpose and intent of [the Settlement] Agreement is properly consummated." (*Id.* ¶ 16).

On November 5, 2009, the Bankruptcy Court approved the Settlement Agreement in its Order Granting Motion for Order Approving Compromise of Controversy with Sarsenstone Corporation Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "2009 Order"). (*Id.* at 811–17). The 2009 Order authorized the Chapter 7 Trustee to enter into the Settlement Agreement, approved and held enforceable the terms of the Settlement Agreement, authorized the Chapter 7 Trustee to take any action reasonably necessary to effectuate the terms of the Settlement Agreement, and retained the Bankruptcy Court's jurisdiction "as enumerated" in the Settlement Agreement. (*Id.* at 812).

Following the 2009 Order, Sarsenstone initiated litigation in Orange County Superior Court (the "State Court Action") against Michael W. Griffith, the former business partner and co-owner of OCF, for his role in the acquisition and management of certain Loan Pools acquired in the name of OCF and serviced by Griffith's company, FCI. (*Id.* at 819). The State Court Action alleges various breaches of fiduciary duty and seeks (1) disgorgement of the illicit profits Griffith and FCI obtained, and (2) rescission of the transfer of 11 Loan Pools from OCF to FCI. (*Id.* at 826).

The governing Third Amended Complaint in the State Court Action ("TAC") alleges as follows:

- In 2002, Griffith and Gregory Fernandez formed OCF under the agreement that Griffith would own 40 percent of OCF and Fernandez would own 60 percent. (*Id.* at 1047). Griffith also was the sole owner of FCI, a widely respected and highly successful buyer, seller, servicer, and collector of debt instruments throughout the United States. (*Id.* at 1045–46).

5

- As corporate agents of OCF (*i.e.*, the trustee to the various investment trusts that held title to the Loan Pools), Griffith and Fernandez breached their fiduciary duties to refrain from self-dealing for undisclosed profits in the trusts and their assets. In particular,
    - Griffith and Fernandez secretly marked up the acquisition price of Loan Pools and pocketed the difference paid by unwitting investors. (*Id.* at 1049).
    - As a marketing pitch, Griffith and Fernandez also misrepresented to investors that certain Loan Pools were such attractive investments that they had invested their own money to acquire ownership interests in the Loan Pool. In truth, however, Griffith and Fernandez paid nothing for the ownership interests they awarded themselves at the time the investment trusts were formed. Instead, they used their ill-gotten profits from the secret mark-up to create false book entries that implied they had put in their own money to acquire a portion of the Loan Pool. (*Id.*).
    - Griffith and Fernandez agreed to falsely state to prospective and actual investors that the *sole* compensation for administering the loan pools would be a "fee" of 15% of gross collections, which would increase to 50% of gross collections once total collections had been sufficient to return all of the investors' original investment to them. In context with the other secret compensation arrangements, the 'fee' was grossly excessive and unreasonable. (*Id.* at 1050).
- In addition, as the relationship between Griffith and Fernandez deteriorated, Griffith and Fernandez agreed that Fernandez would "buy" all of the OCF stock held by Griffith. Instead of having Fernandez pay actual consideration, however, they agreed that OCF would assign its

interests in 11 trusts to FCI (the "FCI Loan Pools"). (*Id.* at 1051–52; Appellee's Reply Brief at 10). Griffith and Fernandez solicited the investors of these trusts to accept the change in trusteeship. They failed to disclose, however, that the change would be the source of consideration to Griffith for his "sale" of stock. This constituted an independent breach of fiduciary duty because Griffith and Fernandez owed a duty to make these disclosures and also to refrain from self-dealing behavior. Therefore, according to Sarsenstone, the change in trusteeship and transfer are void and unenforceable. (ER at 1052).

Shortly before trial in the State Court Action, Griffith and FCI challenged Sarsenstone's standing to bring suit. (*Id.* at 820). In response, Sarsenstone sought clarification from the Bankruptcy Court regarding Sarsenstone's standing to pursue the State Court Action against Griffith and FCI. (*Id.* at 818–91).

On August 6, 2015, the Bankruptcy Court issued its Order on Motion of Weneta M.A. Kosmala, Former Chapter 7 Trustee of the Estate of Old Canal Financial Corporation and Sarsenstone Corporation, Liquidation Agent for the Bankruptcy Trustee, for Order Clarifying and Providing Instruction With Respect to the [2009 Order]. (*Id.* at 1991). This Order adopted the Bankruptcy Court's tentative ruling, which held:

- The Bankruptcy Court has authority to provide clarification regarding the Settlement Agreement because the Settlement Agreement had been incorporated into the Court's 2009 Order. (*Id.* at 1993). Furthermore, the Settlement Agreement itself explicitly provided that Sarsenstone is "to apply to the Bankruptcy Court for instructions" when issues arise regarding the scope of Sarsenstone's powers under the Settlement Agreement. (*Id.* at 1994).
- The Settlement Agreement applied to the FCI Loan Pools and Sarsenstone had standing to pursue claims with respect to the FCI Loan Pools because

    (1) the Settlement Agreement made "no distinction . . . between the Loan Pools for which Sarsenstone is trustee and the pools for which FCI is the trustee"; and (2) the Settlement Agreement provided that the Chapter 7 Trustee had assigned its right to assert all claims to Sarsenstone in Sarsenstone's capacity as the Liquidating Agent for the Chapter 7 Trustee. (*Id.* at 1996–97).

- Although Sarsenstone had not yet obtained the $1 million fidelity bond as required in the Settlement Agreement, this failure did not invalidate the Settlement Agreement. (*Id.* at 2000). Importantly, the Settlement Agreement was not expressly contingent on Sarsenstone's ability to secure the bond. (*Id.*). Even if there had been a material breach of the Settlement Agreement, the Chapter 7 Trustee or another party with standing has not asserted so. (*Id.*).

Sarsenstone then notified the Superior Court in the State Court Action that the Bankruptcy Court had determined that Sarsenstone had standing to bring suit and that the Superior Court was bound by the 2015 Order. (Appellants' Opening Brief at 12).

On August 27, 2015, Appellants brought this appeal. The appeal raises three issues regarding the 2015 Order:

    (1) Whether the Bankruptcy Court erred in ruling that the Settlement Agreement granted Sarsenstone standing to pursue claims on behalf of all third parties who invested money with Old Canal?

    (2) Whether the Bankruptcy Court erred in ruling that Sarsenstone's failure to obtain a $1 million fidelity bond had no impact on its alleged contractual status as Master Pool Trustee under the Settlement Agreement?

    (3) Whether the Bankruptcy Court erred in ordering that the 2009 Order incorporated all of the terms of the Settlement Agreement as a federal court order? (Appellants' Opening Brief (Docket No. 20) at 3).

At the hearing, Appellants indicated that the State Court Action has been stayed pending the outcome of this bankruptcy appeal.

## II. REQUEST FOR JUDICIAL NOTICE

The Court may take judicial notice of court filings and other matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006). Judicial notice is also proper of complaints, court orders, judgments, and other documents filed in other litigation. *Kourtis v. Cameron*, 419 F.3d 989, 995 n.3 (9th Cir. 2005).

Pursuant to the Court's Order Approving Appellants' Request for Judicial Notice, the Court takes judicial notice of the following documents:

- The transcript from the State Court Action dated September 3, 2015 (Exhibit 1);
- The transcript from the State Court Action dated September 14, 2015 (Exhibit 2); and
- Plaintiff's Opposition to Motion to Stay in the State Court Action (Exhibit 3).

(Docket No. 31).

## III. DISCUSSION

This Court has jurisdiction to hear appeals from bankruptcy final judgments, order and decrees. 28 U.S.C. § 158(a). A ruling on an objection to an exemption is a final appealable order under 28 U.S.C. § 158(a)(1). *See Preblich v. Battley*, 181 F.3d 1048, 1056 (9th Cir. 1999).

The Bankruptcy Court's conclusions of law are reviewed de novo and findings of fact are reviewed for clear error. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Findings are clearly erroneous when illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

### A. Jurisdictional Issues

Sarsenstone first argues that this appeal is untimely because the true aim of the appeal is to review the 2009 Order. (Appellee's Brief at 14). Because Appellants challenge the substance of the 2015 Order, which interprets the Settlement Agreement incorporated into the 2009 Order, this appeal is timely.

**B.** **The Bankruptcy Court Did Not Err in Ruling that Sarsenstone Had Standing to Pursue the State Court Action.**

**1. The Bankruptcy Court's Authority to Provide Clarification**

The Bankruptcy Court's determination of its authority to clarify the Settlement Agreement is a conclusion of law, which the Court reviews de novo.

Under 11 U.S.C. § 105(a), the Bankruptcy Court may take any action or make any determination necessary or appropriate to enforce or implement court orders or rules. 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules . . . ."). Bankruptcy courts retain "jurisdiction to interpret and enforce settlements and the accompanying orders approving settlements." *In re Baseline Sports, Inc.*, 393 B.R. 105, 118-19 (Bankr. E.D. Va. 2008); *accord In re Lazy Days' RV Center, Inc.*, 724 F.3d 418, 423 (3d Cir. 2013) (bankruptcy court has authority to reopen chapter 11 case to interpret settlement agreement incorporated into confirmed reorganization plan).

The Ninth Circuit's Bankruptcy Appellate Panel has previously found that a debtor's motion, "which sought to reopen the adversary proceeding and interpret the Judgment and related Settlement Agreement, continued to be a matter that 'arises under' the Bankruptcy Code, and the bankruptcy court had jurisdiction to hear it." *In re Gerard*, No. ADV 1:10-1261, 2014 WL 6892733, at *8 (B.A.P. 9th Cir. Dec. 8, 2014). Alternatively, according to the Ninth Circuit, the bankruptcy court had ancillary jurisdiction to interpret and enforce the Judgment and related Settlement Agreement. *Id.* ("Alternatively, the bankruptcy court had ancillary jurisdiction to

interpret and enforce its prior Judgment and the related Settlement Agreement. 'Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees.'" (citations omitted)); *see also In re Seifert*, No. ADV. LA 10-02359-RN, 2012 WL 1108992, at *6 (B.A.P. 9th Cir. Apr. 3, 2012) ("[T]he bankruptcy court retains jurisdiction to interpret the Settlement Order and to determine whether it should be enforced." (citations omitted)).

Notably, the 2009 Order held that the terms of the Settlement Agreement were approved and enforceable. (ER at 812). In addition, the Bankruptcy Court explicitly reserved, through incorporation of the Settlement Agreement, its jurisdiction "to adjudicate all controversies regarding [the Settlement] Agreement . . . [and] any issues raised by any party to [the Settlement] Agreement in order to ensure that the purpose and intent of [the Settlement] Agreement is properly consummated." (*Id.*; *id.* at 29 ¶ 16).

Accordingly, the Court **AFFIRMS** the Bankruptcy Court that it had authority to clarify and interpret the terms of the Settlement Agreement it approved in the 2009 Order.

### 2. Sarsenstone's Standing in the State Court Action

The Bankruptcy Court's holdings as to Sarsenstone's standing are conclusions of law, which the Court reviews de novo.

Appellants argue that the Settlement Agreement and the 2009 Order did not—nor could they—authorize Sarsenstone to pursue claims on behalf of third-party investors. (Appellants' Opening Brief at 17). This argument, however, rests on a flawed premise—that the claims are brought on behalf of third-party investors.

The Settlement Agreement assigned to Sarsenstone the Chapter 7 Trustee's rights in two ways:

***First***, Sarsenstone succeeded to the Chapter 7 Trustee's status ***as trustee for 7 specific Loan Pools***. (ER at 1051–52). Upon execution of the Settlement

11

Agreement in 2009, Sarsenstone became the trustee of a total of 58 Loan Pools created by OCF. The remaining 11 FCI Loan Pools continued to be held in trust by FCI as their trustee. (*Id.*). Under the Settlement Agreement, the 58 Loan Pools (also referred to as "Non-FCI Loan Pools") were consolidated into the Master Loan Pool, of which Sarsenstone became the Master Pool Trustee. (*Id.* at 20 ¶ 3).

***Second***, Sarsenstone became the Liquidating Agent of the Chapter 7 Trustee in her capacity ***as trustee for OCF's Bankruptcy Estate***. The Chapter 7 Trustee assigned to Sarsenstone her rights to pursue all claims and litigation on behalf of OCF's Bankruptcy Estate, including claims against third parties who had acquired control over or rights in property rightfully belonging to the Master Loan Pool or OCF's Bankruptcy Estate. (*Id.* ¶ 3(f)).

As discussed below, the claims for breach of fiduciary duty that Sarsenstone asserts in the State Court Action are consistent with Sarsenstone's status and standing as (1) the Master Pool Trustee on behalf of the Non-FCI Loan Pools; and (2) the Liquidating Agent on behalf of OCF's Bankruptcy Estate, which allegedly holds the title to the FCI Loan Pools because the 2004 transfers to FCI are void.

### a. *As Master Pool Trustee*

As to the non-FCI Loan Pools, the TAC alleges that Appellants violated their fiduciary duties as agents of OCF, Sarsenstone's predecessor trustee to the non-FCI Loan Pools. Specifically, the TAC alleges that Appellants breached their fiduciary duties as corporate agents carrying out the trustee duties of OCF through acts of self-dealing, namely (1) pocketing secret mark-ups; (2) assigning themselves unpaid-for equity interests; and (3) paying themselves unjust and excessive compensation fees. (ER at 1058 ¶ 42).

It is black letter law that, if "a trustee who commits a breach of trust is thereafter removed or otherwise ceases to serve as trustee, a successor trustee can maintain a suit against the former trustee (or that trustee's personal representative) to redress the breach[.]" Restatement (Third) of Trusts § 94 (2012); *see also* Robert

12

I. Weil et al., *California Practice Guide: Civil Procedure Before Trial* Ch. 2-A (2015 ed.) ("The beneficiary of a trust generally is not the real party in interest on claims belonging to the trust and may not sue in the name of the trust."); 13 Bernard E. Witkin et al., *Summary of California Law*, Trusts § 150 (10th ed. 2005) ("Generally the trustee is the real party in interest with legal title to any cause of action on behalf of the trust."). Therefore, Sarsenstone, as the successor trustee, has standing to bring suit against Appellants, corporate agents of the predecessor trustee for the alleged breaches of fiduciary duty. Appellants do not cite any California case law, and the Court has not found any, that suggest a successor trustee's right to bring claims for breach of fiduciary duty against its predecessor is somehow extinguished because the beneficiaries of the trust (*i.e.*, the individual investors) might have other derivative claims against the predecessor.

At the hearing, counsel for Appellants argued that Sarsenstone's briefing before the Bankruptcy Court suggested that the 11 FCI Loan Pools belonged to the Master Loan Pool, and that the Bankruptcy Court had clearly erred in accepting this contention. This argument, however, is unsupported in the record.

Sarsenstone's briefing before the Bankruptcy Court explicitly recognized that the Master Loan Pool did not include the 11 FCI Loan Pools. (ER at 832 ("The Agreement, as mentioned above, states that Sarsenstone shall serve as the Master Pool Trustee to all the pools found on the Loan Schedule *excepting the eleven pools that were at the time controlled by FCI as Trustee*, not owner." (emphasis added)). Furthermore, in holding that the Settlement Agreement applied to the 11 FCI Loan Pools, the 2015 Order analyzed only the provisions relating to the Bankruptcy Estate's property (Paragraph 4) and Sarsenstone's appointment as Liquidating Agent (Paragraph 6). (*Id.* at 1997). Specifically, the Bankruptcy Court recognized that, in Paragraph 4, the parties did not distinguish between the FCI and non-FCI Loan Pools when enumerating what the parties agreed would be considered property belonging to the Bankruptcy Estate. (*Id.*). Furthermore, because the Settlement

Agreement provided that Sarsenstone would become the Liquidation Agent for the Chapter 7 Trustee, "and that all causes of action for which the [Chapter 7] Trustee had standing to assert would then be assigned to Sarsenstone." (*Id.*). Therefore, Appellants' argument that the Bankruptcy Court erred is without merit because the 2015 Order held that Sarsenstone's standing to pursue claims on behalf of the 11 FCI Loan Pools originated from its status as the Liquidating Agent of the Chapter 7 Trustee, not as the Master Pool Trustee.

At the hearing, counsel for Appellants argued that there remains an issue of when the trusts were first formed before they were consolidated into the Master Loan Pool. The Court expresses no opinion on the formation of the trusts as it was neither an issue before the Bankruptcy Court nor briefed in the appeal. Furthermore, although standing issues may be intertwined with the merits of a case, the substance of Appellants' argument appears to be something for the Superior Court—specifically, that Sarsenstone's claim for breach of fiduciary duty fails to the extent it seeks redress for alleged misconduct that occurred before the actual formation of the trusts. In other words, Appellants could not have had a fiduciary duty preceding the formation of the trusts. Issues regarding the formation of the trusts, however, should be determined by the Superior Court in the State Court Action.

To be clear, the Court's ruling today only encompasses Sarsenstone's standing to bring the existing breach of fiduciary duty claims, which are the substantive claims pleaded against Appellants in the State Court Action. The other claims are for constructive trust, accounting, and "money had and received," which seem to go towards how to recover the money rather than additional substantive claims for wrongdoing. To the extent an adverse finding regarding the formation of the trusts precipitates a morphing of Sarsenstone's existing claims into something else, the Court declines Appellants' invitation to draw a "clear line of demarcation," which would amount to an impermissible advisory opinion based on hypothetical

scenarios. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").

### b. *As Liquidating Agent of the Chapter 7 Trustee*

As to the FCI Loan Pools, the TAC alleges that Griffith violated his fiduciary duties as an agent of OCF in fraudulently conveying the FCI Pools to FCI without the prerequisite disclosure. Assuming the allegations are true, as the Liquidating Agent of the Chapter 7 Trustee, Sarsenstone seeks to unwind the transfer so that the FCI Loan Pools revert back to OCF's Bankruptcy Estate. In addition to bringing suit against Griffith, Sarsenstone has also brought suit against FCI. If a "trustee in breach of trust transfers trust property to a person who is not a bona fide purchaser . . ., the successor trustee can maintain a bill in equity against the third person." Restatement (First) of Trusts § 294 (1935); *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462 (9th Cir. 2015) ("So long as 'the trustee is ready and willing to undertake the necessary proceedings,' then 'the beneficiaries cannot maintain a suit against adverse third parties.'" (quoting *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 464, 80 Cal. Rptr. 2d 329 (1998), *as modified on denial of reh'g* (Jan. 6, 1999))).

Appellants rely on the Supreme Court's decision in *Caplin v. Marine Midland Grace Trust Company* and the Ninth Circuit's decision in *Williams v. California 1st Bank* to argue that "a bankruptcy trustee has no standing to sue third parties on behalf of the estate's creditors, but may only assert claims held by the debtor itself." (Appellants' Opening Brief at 15 (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434(1972); *Williams v. California 1st Bank*, 859 F.2d 664, 667 (9th Cir. 1988. These cases are distinguishable precisely because the bankruptcy trustees in *Caplin* and *Williams* brought suit on behalf of the estate's creditors rather than the

15

bankruptcy estate itself. *See Williams*, 859 F.2d at 667 ("As a result, the Trustee, as in *Caplin*, is attempting to 'collect money not owed to the estate.'").

"In *Williams*, the trustee was not suing on behalf of the bankrupt estate, but rather on behalf of certain investors, and the trustee did not plan to distribute the proceeds to non-assigning investors, or to any other creditors of the estate." *In re Davey Roofing, Inc.*, 167 B.R. 604, 607 (Bankr. C.D. Cal. 1994). Similarly, in *Caplin*, the Supreme Court concluded that the bankruptcy trustee had no standing to assert, "on behalf of the holders of the debtor's debentures, claims of misconduct against a third party." *Williams*, 859 F.2d at 666 ("Chacklan Enterprises [the debtor], like the bankrupt corporation in *Caplin*, has no claim of its own that it could press against the defendant.").

As the Ninth Circuit has noted, "[a]lthough the line between 'claims of the debtor, which a trustee has statutory authority to assert, and 'claims of creditors,' which [*Caplin*] bars the trustee from pursuing, is not always clear, the focus of the inquiry is on whether the Trustee is seeking to redress ***injuries to the debtor itself caused by the defendants' alleged conduct***." *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (emphasis added). Here, Griffith's breach of fiduciary duties deprived OCF (and now its Bankruptcy Estate) of its interests in the 11 FCI Loan Pools. *Cf. id.* at 1003 (breach of duties owed to the debtor company qualified as injuries to the company and therefore conferred standing upon the trustee of the bankruptcy estate to bring suit against the former directors and officers of the debtor company). On very similar facts, the Ninth Circuit has affirmed a district court's ruling that the trustee of a bankruptcy estate had exclusive standing to sue a third party "seeking avoidance of a fraudulent transfer" on the grounds of insufficient consideration. *See CarrAmerica Realty Corp. v. Nvidia Corp.*, 302 F. App'x 514, 516 (9th Cir. 2008), *as amended* (Jan. 22, 2009), *as amended* (Mar. 10, 2009). The Ninth Circuit recognized that, "[w]hile the [c]reditors were harmed by the alleged diminution of [the bankruptcy] estate, depleting the assets available for

the bankruptcy estate constitutes an injury to the bankrupt corporation itself, not an individual creditor of that corporation." *Id.*

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's determination that Sarsenstone had standing to bring suit in the State Court Action.

### C. The Bankruptcy Court Did Not Err in Ruling that the $1 Million Bond Did Not Affect Sarsenstone's Master Pool Trustee Status

The Bankruptcy Court's holdings as to the legal effect of Sarsenstone's failure to obtain the $1 million bond are conclusions of law, which the Court reviews de novo.

Appellants complain that the Bankruptcy Court did not provide any fact-finding or analysis of contract or trust law principles in determining that Sarsenstone's failure to obtain a bond did not invalidate the Settlement Agreement. (Appellants' Opening Brief at 27). Appellants also argue that the Bankruptcy Court impermissibly substituted its own judgment regarding the legal effect of Sarsenstone's failure for that of the Superior Court in the State Court Action. (*Id.* at 27–28).

As a preliminary matter, as discussed above, the Bankruptcy Court retained jurisdiction to interpret the terms of the Settlement Agreement, including examining whether the bond requirement amounted to a condition precedent to Sarsenstone's status as Master Pool Trustee or Liquidating Agent. Appellants' argument that the Bankruptcy Court exceeded its authority is without merit.

The relevant portion of the Settlement Agreement provides:

> The assets whether real, personal, tangible or intangible of all the Loan Pools (the "Assets") (including without limitation causes of action) shall be consolidated for liquidation purposes in a single "Master Loan Pool" of which Sarsenstone shall be the "Master Pool Trustee." On or before September 30, 2009, Sarsenstone shall obtain a fidelity bond in the amount of at least $1,000,000 for the benefit of the

17

> [Chapter 7] Trustee and the beneficiaries of the Master Loan Pool in the form attached hereto as Exhibit "A" drawable in the event of any misapplication of Master Loan Pool Assets or other breaches of fiduciary duty by Sarsenstone. As Master Pool Trustee, Sarsenstone shall have all of the powers and rights granted in the separate Loan Pool Trust instruments, and all powers necessary and proper to fulfill the purposes of this Agreement.

(ER at 20 ¶ 3).

A plain reading of the provision supports the Bankruptcy Court's determination that the Settlement Agreement "is not expressly contingent upon Sarsenstone securing a bond." (*Id.* at 2000). The express terms of the Settlement Agreement do not reflect an intent by the parties to condition Sarsenstone's status as the Master Pool Trustee on Sarsenstone's ability to procure the $1 million bond.

A condition precedent may not be implied unless it is necessary to make the contract reasonable. Cal. Civ. Code § 1655. The condition precedent advanced by Appellants is not necessary for the Settlement Agreement to be reasonable: there is nothing **un**reasonable about the parties' agreement to appoint Sarsenstone as the Master Pool Trustee without conditioning that appointment on Sarsenstone's ability to obtain the $1 million bond. *Cf. MIC Prop. & Cas. Ins. Corp. v. Universal Underwriters Ins. Grp.*, No. A100648, 2003 WL 22790802, at *9 (Cal. Ct. App. Nov. 25, 2003) (refusing to supply an implied condition precedent because it is not unreasonable that the insurer agreed to arbitrate whether its policy affords certain coverage, even though its position was that the policy did not afford coverage); *see also Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317–18 (9th Cir. 1997) (refusing to supply an implied condition precedent to the contract when there is no express language in the contract susceptible to the competing interpretation).

18

Appellants' reliance on extremely dated California cases regarding probate law is inapposite. *See Pryor v. Downey*, 50 Cal. 388, 399 (1875) (court order appointing a party to administer decedent's estate was conditioned on giving security by filing a bond required by statute); *Texas Co. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 5 Cal. 2d 35, 40, 53 P.2d 127 (1935) ("An attempted sale of land by one who assumes to act as administrator, but who has not been regularly appointed, and who has not given the bond and qualified and received letters as such, is void, even if the sale is ordered and approved by the probate court.").

Appellants present no evidence or argument that Sarsenstone's failure to secure the bond amounted to a material breach that would terminate the Settlement Agreement. Therefore, the Court does not reach this issue.

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's determination that Sarsenstone's failure to obtain the bond did not affect its status as Master Pool Trustee.

### D. The Bankruptcy Court Did Not Err in Ruling that its 2009 Order Incorporated the Settlement Agreement

The Bankruptcy Court's determination that the 2009 Order incorporated the Settlement Agreement is a finding of fact, which the Court reviews for clear error.

Appellants' contention that the 2009 Order did not incorporate the Settlement Agreement is defeated by (1) the express incorporation in Paragraph 7 of the 2009 Order, which provides "[t]he Bankruptcy Court retains jurisdiction as enumerated in the Agreement" (ER at 812 ¶ 7); and (2) the implied incorporation in Paragraph 3 of the 2009 Order, which incorporated by reference and approval all the terms of the Settlement Agreement (*id.* at 812 ¶ 3).

The Bankruptcy Court's determination that the 2009 Order incorporated the Settlement Agreement is not illogical, implausible, or without support in the record. *Retz*, 606 F.3d at 1196. And even if the determination was a conclusion of law, there would be no error.

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's determination that the 2009 Order incorporated the Settlement Agreement.

IV. **CONCLUSION**

Accordingly, the Court **AFFIRMS** the decision of the Bankruptcy Court.

IT IS SO ORDERED.

DATED: April 5, 2016.   _____
MICHAEL W. FITZGERALD
United States District Judge

cc: Bankruptcy Court